United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GERARDO RAMIREZ LARIOS,

Petitioner,

v.

R.J. RACKLEY, Warden,

Respondent.
_______________________________/

No. C 12-1715 CW (PR)

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

Petitioner Gerardo Ramirez Larios, a California prisoner proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the validity of his state conviction. Respondent filed an answer and a memorandum of points and authorities in support thereof. Petitioner had an opportunity to file a traverse, but did not do so. For the reasons stated below, the Court DENIES the petition.

BACKGROUND

I. Procedural History

On November 17, 2008, the Marin County District Attorney filed an information charging Petitioner with count one, murder, count two, gross vehicular homicide while intoxicated, and counts three and four, driving with a suspended license. 3 CT 553-555.

On December 22, 2008, a Marin County Superior Court jury could not reach any verdicts, and a mistrial was declared. 3 CT 795.

A second trial was held and, on April 20, 2009, a jury convicted Petitioner on counts one and two. 7 RT 254-55.

On June 17, 2009, the trial court sentenced Petitioner to state prison for a term of fifteen years to life for count one, and stayed a term of fifteen years to life for count two.[1] 6 CT 1561.

On July 14, 2010, Petitioner appealed the judgment to the California Court of Appeal. Petitioner asserted claims that the trial court violated his due process rights by admitting lay opinion testimony and by declining defense counsel's request for a pinpoint jury instruction. He also asserted a claim of prosecutorial misconduct. On April 1, 2011, in a written opinion, the California Court of Appeal affirmed the trial court’s judgment. Ex. F at 18, People v. Larios, 2011 Cal. App. Unpub. LEXIS 2452 (Cal. App. 1st Dist. Apr. 1, 2011).

On April 1, 2011, Petitioner filed a petition for review in the California Supreme Court. On June 15, 2011, the California Supreme Court summarily denied review.

On April 5, 2012, Petitioner filed the instant petition.

## II. Statement of Facts

The following is a summary of the key facts taken from the written opinion of the California Court of Appeal. Ex. F at 2-8.

---

[1] Petitioner plead guilty to counts three and four. The trial court sentenced Petitioner to county jail for a concurrent term of six months for count three and a consecutive term of one year for count four.

On June 12, 2007, at approximately 4:30 p.m., Richard Teague was at his Point Reyes home with high school friend Zachary Seifert-Ponce. Petitioner, who was Teague and Seifert-Ponce's friend, arrived at Teague's home in his black Chevrolet pickup truck with two twelve-packs of beer. At Petitioner's suggestion they went to Limantour Beach. Petitioner drove fast on the way to the beach and, at one point, lost traction with the roadway. Each of the three men consumed alcohol in the pickup truck before reaching the beach and drank alcohol while walking along the beach. Both twelve-packs of beer had been consumed by the time the three men left. On the way back to Teague's home, Petitioner continued to speed and drive recklessly until Seifert-Ponce asked Petitioner to slow down.

After spending approximately thirty minutes at Teague's home, Teague and Petitioner left in the truck without Seifert-Ponce, with Teague in the passenger seat and Petitioner driving. Neither of the men wore a seat belt.

Several witnesses observed Petitioner driving his black pickup truck after he left the Teague residence. Anna Kehoe, Petitioner's neighbor of many years, recognized him driving his black truck toward her in the wrong traffic lane at a high rate of speed. Kehoe was positive Petitioner was the driver and saw another figure in the passenger seat before she pulled off the road to avoid colliding with Petitioner's truck.

Gregory and Elissa Filbrandt identified Petitioner driving toward them at a high rate of speed and observed a young man hanging out of the passenger window waving his arms and screaming. Mr. Filbrandt unsuccessfully attempted to call 911. After

stopping briefly in Inverness, the Filbrandts witnessed the same vehicle speeding through town, exceeding sixty-five miles per hour in a twenty-five mile per hour zone.

As he was about to turn south on Highway One, Eric Johnson witnessed an older model pickup truck speeding out of control and losing traction. The vehicle came within a few feet of Johnson's vehicle. After stopping briefly, Johnson continued along Highway One until he encountered the scene of an accident. The pickup truck Johnson had previously seen was in a ditch, facing the wrong direction, and on fire. At trial, Johnson identified the driver as Petitioner, and described the passenger as a younger man. 5 CT 1131, 1143.

Richard Mallouf observed the same accident scene described by Johnson, and reported that Teague, who appeared to be unconscious, was in the passenger seat with his head facing the driver. Previously, Mallouf had seen Petitioner several times. He observed that Petitioner was in the driver's seat with both hands on the steering wheel. He then observed Petitioner climb out of the rear window and into the bed of the pickup truck.

Dennis Rodoni was also present at the accident scene. He observed Teague in the passenger seat with his head down, unconscious, and Petitioner on his knees in the driver's seat, attempting to exit the truck through the rear window.

Johnson and Rodoni were unsuccessful in their attempts to pry open the passenger door of the truck, where Teague remained wedged in the cab.

Paramedics were dispatched at 7:29 p.m. and arrived at 7:40 p.m. 15 RT 966-67, 1010, 1031. Emergency personnel removed the

passenger side door and roof of the vehicle in order to free Teague, who later died due to severe blunt force trauma to the head and torso that resulted in fatal internal injuries.

Petitioner told a paramedic that he was the driver of the vehicle and was wearing his seat belt at the time of the accident. Subsequent investigations, however, suggested neither of the seatbelts had been in use when the accident occurred. Blood-alcohol tests conducted at the hospital and shortly before Petitioner's arrest showed Petitioner's blood-alcohol level at the time of the accident was 0.28 percent. Experts testified that Petitioner had consumed fourteen beers to reach that level of intoxication.

The morning after the accident, at 12:44 a.m., in an interview with California Highway Patrol (CHP) investigators, Petitioner freely admitted that he was the driver of the vehicle and denied that Teague was ever the driver. However, Petitioner stated that Teague knew Petitioner was drunk and may have briefly taken away Petitioner's car keys. Petitioner had no recollection of the collision and did not recall specifically if he was driving at the time.

An investigation by the CHP estimated the vehicle was traveling in excess of sixty miles per hour when it struck a utility pole, then a tree and fence post before stopping in a backward position down the embankment of Highway One.

The passenger door of the vehicle was missing when investigating officers examined the accident scene. During the trial, the prosecution presented letters written by Petitioner during his incarceration, indicating that Petitioner's girlfriend,

Nacole Borg, and former wife, Rose Freeman, were in possession of the missing door. In these letters, Petitioner instructed Borg and Freeman to hide the door and not to mention it to anyone, including his attorney. Petitioner also expressed concern that the prosecution would learn of the door's existence. The prosecution never obtained possession of the door.

Petitioner presented evidence at trial that he was not the driver at the time of the collision. A hospital physician and psychiatrist for the defense testified that Petitioner suffered from a concussion in the collision which, when combined with alcohol he consumed and trauma from the accident, may have resulted in a permanent loss of memory of the event. They testified that, although Petitioner made statements that he was the driver at the time of the accident, he may have formed his memory of the accident by "filling in the blanks" to describe erroneously an event that did not actually occur.

Petitioner also called experts in biomechanical engineering and accident reconstruction who, after reviewing the police and medical records, offered opinions that Teague was the driver of the vehicle at the time of the accident and Petitioner was the passenger.

LEGAL STANDARD

A federal court may entertain a habeas petition from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, a district court may not grant habeas relief unless the state court's adjudication of the claim:

United States District Court
For the Northern District of California

"(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412 (2000).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

A federal court on habeas review may not issue a writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. Id. at 409. Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003). The factual determinations by state courts are

presumed correct unless there is "clear and convincing evidence to the contrary.” Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

If constitutional error is found, habeas relief is warranted only if the error had a “‘substantial and injurious effect or influence in determining the jury’s verdict.’” Penry v. Johnson, 532 U.S. 782, 795 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)).

When there is no reasoned opinion from the highest state court to consider the petitioner’s claims, the court looks to the last reasoned opinion of the highest court to analyze whether the state judgment was erroneous under the standard of § 2254(d). Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991). In the present case, the California Court of Appeal is the highest court that addressed Petitioner’s claims in a reasoned opinion.

DISCUSSION

In support of his petition for a writ of habeas corpus, Petitioner presents the same three claims that he presented on direct appeal: (1) the trial court violated his due process rights by admitting lay opinion testimony; (2) the trial court violated his due process rights by refusing to give a pinpoint jury instruction requested by the defense; and (3) prosecutorial misconduct.

I. Lay Opinion Testimony

Petitioner claims the trial court committed reversible error in allowing opinion testimony from law enforcement officials and emergency personnel who responded to the scene of the accident. At trial these witnesses recounted statements made by Petitioner and their observations of the accident scene. When asked by the

United States District Court
For the Northern District of California

prosecution, they gave their opinion that Petitioner was the driver of the vehicle at the time of the accident. This testimony was admitted over the defense's objection that the critical issue in this case was whether Petitioner was driving at the moment the accident occurred and, thus, this testimony allowed witnesses to testify that, in their opinions, Petitioner was guilty.

A. California Court of Appeal Opinion

The California Court of Appeal considered and rejected this claim as follows:

> First, evidence that defendant was the driver of the pickup truck was a proper subject of lay opinion testimony. Under the circumstances presented, whether defendant was driving when the accident occurred was a matter of common experience which was not founded on scientific knowledge or specialized background. It helped the jury to fully appreciate the testimony of the witnesses. . . . The lay opinion testimony that defendant was driving the pickup truck conveyed relevant information to the jury more conveniently and more accurately than a detailed recital of the underlying facts.
>
> . . .
>
> The opinions were also rationally based on the perceptions of the witnesses. The officers and paramedics were present and witnessed the aftermath of the accident. They not only appraised the accident scene, but also observed defendant's conduct and conversed with him as well as other witnesses. As we read the record, the opinions as offered by the witnesses were derived from their personal knowledge of defendant's statements, along with additional observations they made at the accident site and while transporting defendant to the hospital. Lay opinion testimony is relevant and therefore admissible "when it is based on the witness's personal observation of the defendant's course of behavior." (People v. Felix (1999) 70 Cal. App. 4th 426, 430.) The opinions of the witnesses in the case before us were rational inferences drawn from facts they personally observed, and enhanced the ability of the jury to assess the evidence perceived by the witnesses.
>
> . . .

United States District Court
For the Northern District of California

> Defendant further argues that the testimony was impermissible opinion testimony on the ultimate issue of his guilt. Defendant asserts that his status as the driver rather than passenger in the pickup truck was the crucial issue in the case. Therefore, his argument proceeds, "in effect" the admission of testimony from witnesses that he "was driving at the time of the collision" permitted them to express opinions that he "was guilty."
>
> We are not persuaded that the admission of lay opinion testimony in the present case erroneously invaded the province of the jury to determine the issue of defendant's guilt.
>
> . . .
>
> Here, the witnesses did not offer opinions that defendant was guilty or even that crimes had been committed. The opinion testimony was limited to defendant's act of driving the vehicle. The witnesses did not expound on the nature of defendant's driving, the cause of the collision, or any other elements of the charged murder and gross vehicular manslaughter offenses. . . . The testimony did not draw an inference of guilt which was properly reserved for the jury, but rather enhanced the ability of the jury to understand and draw inferences from the remaining testimony which reflected on the issue of the driver of the pickup truck when the accident occurred. In addition, the trial court instructed the jurors that they were the sole judges of the credibility of a witness, that they should consider all the evidence on which the proof of any fact depends, and that they were free to determine the weight, if any, to accord an opinion upon considering the basis for the opinion. . . . We conclude that the court's admission of the lay opinion testimony did not fall outside the bounds of reason. . . . It therefore was properly received.

Ex. F at 8-12 (footnote 3 omitted).

B. Federal Authority

The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of a fundamentally fair trial guaranteed by due process. Henry v. Kernan, 197 F.3d 1021, 1031 (9th Cir. 1999); Colley v. Sumner, 784 F.2d 984, 990 (9th Cir. 1986), cert. denied, 479 U.S. 839 (1986).

The due process inquiry in federal habeas review is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair. Walters v. Mass, 45 F.3d 1355, 1357, (9th Cir. 1995); Colley, 784 F.2d at 990. However, the Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) (finding that trial court's admission of irrelevant pornographic materials was "fundamentally unfair" under Ninth Circuit precedent but not contrary to, or an unreasonable application of, clearly established Federal law under § 2254(d)).

C. Analysis

This claim fails because no Supreme Court authority has held that the admission of irrelevant or prejudicial evidence constitutes a due process violation. Id. at 1101. Therefore, the California Court of Appeal's denial of this claim was not contrary to or an unreasonable application of Supreme Court authority. Furthermore, as the California Court of Appeal reasonably found, the lay opinion testimony was based on the witnesses' observations, and Petitioner's statements to them at the scene of the collision. This testimony was limited to Petitioner's act of driving the vehicle and did not, as Petitioner argues, expound on the cause of the collision or other elements of the murder and gross vehicular manslaughter offenses. Thus, these witnesses did not offer opinions regarding Petitioner's guilt or whether he committed the charged crimes. For this reason also, the admission of this testimony did not violate Petitioner's due process rights.

Petitioner cites Washington v. Texas, 388 U.S. 14 (1967), to argue that he was denied his Sixth Amendment right to present a defense. However, this case is not applicable. In Washington, the defendant was not allowed to submit the testimony of a witness in order to counter the prosecution's case. Id. at 19. Here, the trial court did not prevent Petitioner from calling witnesses or presenting evidence that would negate the prosecution's case or establish a defense.

Furthermore, even if the admission of this testimony constituted error, the error was harmless under the standard set forth in Brecht, 507 U.S. at 637. Under this standard, error justifies the overturning of a conviction only if it has a "substantial and injurious effect or influence in determining the jury's verdict." Id. Here, the challenged testimony was but one element of a body of evidence showing that Petitioner was the driver. For instance, Johnson saw Petitioner driving the vehicle shortly before the collision, Rodoni and Mallouf saw Petitioner in the driver's seat immediately after the collision, and Mallouf witnessed Petitioner climb out of the vehicle's center rear window after the collision. 19 RT 1193-94, 15 RT 889-93. First responders also had conversations with Petitioner in which he stated that he was the driver of the vehicle. 15 RT 939-40. The exclusion of the opinion testimony, considering the overwhelming evidence that Petitioner was the driver, would not have had a substantial effect or influence in determining the jury's verdict.

Accordingly, Petitioner is not entitled to habeas relief on this claim.

II. Rejection of Pinpoint Jury Instruction

Petitioner argues the trial court erred when it declined to give a pinpoint jury instruction requested by defense counsel that, in order to convict Petitioner, the jury must find beyond a reasonable doubt that he was driving the vehicle at the time of the collision.

A. California Court of Appeal Opinion

The California Court of Appeal considered and rejected this claim as follows:

> Here, the jury received accurate and complete instructions on the prosecution's burden of proof and on the elements of murder and gross vehicular manslaughter while intoxicated. Specifically, the requirement of proof that defendant committed an act, in this case driving, that caused the death of the victim, was explained in the standard instructions. The murder instruction, CALCRIM No. 520, advised the jury that the prosecution must prove defendant "committed an act that caused the death of another person," with malice aforethought. Implied malice was defined in the murder instruction as the deliberate commission of an act with conscious disregard for human life, the consequences of which were known to defendant to be dangerous, and which was a substantial factor in causing the death of the victim.
>
> The instruction on gross vehicular manslaughter while intoxicated, CALCRIM No. 590, stated the prosecution must prove "defendant drove under the influence of an alcoholic beverage," and that "while driving under the influence of an alcoholic beverage" and with "gross negligence" he "committed an infraction that might cause death."
>
> . . .
>
> When read in their entirety and considered in the context of the evidence and argument presented, the instructions were adequate to notify the jury of the essential element of the case that defendant was driving at the moment of the collision that killed Teague . . . We are convinced that the instructions were understood by the jury to require a finding that the act necessary to establish the offenses was defendant's act of driving — with conscious disregard for human life to establish murder, or with gross negligence while under the

> influence of alcohol to establish gross vehicular manslaughter while intoxicated. Under the circumstances, no other possible act fit the definitions of the charged offenses. We have no doubt the jury was aware the instructions did not authorize convictions on the basis of either driving infractions committed by defendant before the accident, or his act of permitting the inebriated victim to drive immediately before the collision occurred.

Ex. F at 13-15 (footnotes 4-5 omitted).

B. Federal Authority

State instructional error can be the basis of federal habeas relief only if it "so infected the entire trial that the resulting conviction violates due process." Estelle v. McGuire, 502 U.S. 62, 72 (1991). A party claiming constitutional error must show that there is a "reasonable likelihood" that the jury misapplied the instructions. Id. When making this assessment, the challenged instruction is evaluated "in the context of the instructions as a whole and the trial record," including the arguments of counsel, which may clarify the charge to the jury. Middleton v. McNeil, 541 U.S. 433, 438 (2004) (per curiam). A federal habeas court will defer to a state court's reasonable application of these principles, Waddington v. Sarausad, 555 U.S. 179, 191 (2009). If error did occur, habeas relief is warranted only if it had a substantial and injurious effect or influence on the verdict. Brecht, 507 U.S. at 627.

C. Analysis

As the state appellate court concluded in its well-reasoned opinion, there was no need to give a pinpoint instruction to the jury because the instructions sufficiently informed it of the prosecution's burden of proof on the elements of murder and gross vehicular manslaughter while intoxicated. Furthermore, the jury

instructions were reinforced by defense counsel's closing arguments, in which she argued that Petitioner was not the driver of the vehicle at the time of the collision. RT at 2655, 2657, 2698. The prosecution also argued that, to find the Petitioner guilty, the jury had to find beyond a reasonable doubt that he was the driver at the time of the collision. RT at 2647-48. When the instructions are read in their entirety and evaluated in the context of the evidence and arguments presented by counsel, it cannot be found that the jury misapplied the instructions or did not know that it had to find that Petitioner was the driver at the time of the collision in order to find him guilty of counts one and two.

Even if the omission of the pinpoint instruction constituted error, Petitioner is not entitled to federal habeas relief under Brecht because the error did not have a substantial and injurious effect or influence in determining the jury's verdict. As discussed above, the instructions given to the jury required a finding beyond a reasonable doubt that Petitioner was driving the vehicle at the time of the accident. A redundant pinpoint instruction would not have changed the result of the jury's verdict. Citing no Supreme Court authority to the contrary, Petitioner fails to show the Court of Appeal's opinion was contrary to or an unreasonable application of Supreme Court precedent or an unreasonable determination of the facts in light of the state court record.

Accordingly, Petitioner is not entitled to habeas relief on this claim.

III. Prosecutorial Misconduct

Petitioner argues the prosecution engaged in misconduct by arguing facts not in evidence, that Petitioner, his girlfriend, and his former wife, colluded to remove the passenger door of Petitioner's pickup truck from the collision site and concealed it from law enforcement investigators.

A. California Court of Appeal Opinion

The California Court of Appeal considered and rejected this claim as follows:

> A reasonable inference from the evidence is that defendant was at least complicit in a scheme to prevent the prosecution from discovering the missing passenger door, which may have been of evidentiary value in establishing or confirming the identity of the passenger when the accident occurred. Thus, the prosecutor was justified in suggesting that defendant was part of an effort to suppress evidence, which indicated his consciousness of guilt. . . . A prosecutor's wide latitude to comment on the evidence includes "urging the jury to make reasonable inferences and deductions therefrom" . . . We find that the prosecutor did not mischaracterize the record or assume facts not in evidence, but merely commented on the evidence and offered the jury permissible inferences drawn from it. The closing argument was properly based on the prosecutor's understanding of the evidence.

Ex. F at 16-18 (footnote 6 omitted).

B. Federal Authority

Federal habeas relief is only justified if the prosecutor's comments have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 447 U.S. 168, 181 (1986)(quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974)). In cases of alleged prosecutorial misconduct, the due process analysis is focused on "the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips, 455 U.S. 209, 219 (1982).

Under Darden, the factors which a court may take into account in determining whether misconduct rises to a level of due process violation are: (1) the weight of evidence of guilt, (2) whether the misconduct was isolated or part of an ongoing pattern, (3) whether the misconduct relates to a critical part of the case, and (4) whether a prosecutor's comment misstates or manipulates the evidence. Darden, 477 U.S. at 182.

Additionally, under AEDPA, a federal habeas court examines only whether the state court's application of these principles was unreasonable. Brown v. Payton, 544 U.S. 133, 143 (2005). In the event a constitutional error occurred, habeas relief will be denied unless the error had a substantial and injurious effect or influence on the jury's verdict. Johnson v. Sublett, 63 F.3d 926, 930 (9th Cir. 1995).

C. Analysis

As the Court of Appeal reasonably concluded, the prosecution's reference to Petitioner's efforts to facilitate concealment of the passenger door was based upon reasonable inferences from the evidence, and did not infect the trial with unfairness to the degree that due process was denied.

Furthermore, none of the Darden factors support Petitioner's claim. The first Darden factor is not met because, as discussed above, the weight of the evidence showing Petitioner's guilt was considerable. The jury heard evidence that Petitioner made statements to responders that he was the driver at the time of the collision, witnesses identified Petitioner as the driver moments before and after the collision, and expert testimony reconstructing the crash site showed Petitioner was the driver.

The second Darden factor is not satisfied because the prosecution's challenged conduct was isolated and not part of an ongoing pattern. The third Darden factor is not met because the issue of the door was not a critical part of the case. Finally, as reasonably found by the Court of Appeal, the prosecution did not misstate the evidence, but rather commented on it to allow the jury to draw permissible inferences from it.

Moreover, even if the prosecution's statement was misconduct, the error was harmless, and did not have a "substantial and injurious effect or influence in determining the jury's verdict." See Brecht, 507 U.S. at 637. As discussed above, the jury was presented with overwhelming evidence of Petitioner's guilt. Therefore, the prosecution's mention of Petitioner's efforts to conceal the passenger door would not have affected the jury verdict. The state appellate court's denial of this claim was not objectively unreasonable.

Accordingly, Petitioner is not entitled to habeas relief on this claim.

CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

No certificate of appealability is warranted in this case. See Rule 11(a) of the Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (requiring district court to rule on certificate of appealability in same order that denies petition). Petitioner has failed to make a substantial showing that his claim amounted to a denial of his constitutional rights or demonstrate that a reasonable jurist would find this Court’s denial of his claim

United States District Court
For the Northern District of California

debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484 (2000).

The Clerk shall enter judgment and close the file.

IT IS SO ORDERED.

Dated: 6/30/2014

CLAUDIA WILKEN
United States District Judge